# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PITNEY BOWES, INC., | : | CIVIL ACTION |
| Plaintiff, | : | NO. 09-05024 |
| v. | : | |
| ITS MAILING SYSTEMS, INC., GARY P. SHANK, MARTIN R. KLAGHOLZ RYAN HIMMELREICH, and MARK GASTON | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                                              March 17, 2010

Currently before the Court are Defendants ITS Mailing Systems, Inc., Gary Shank, and Martin Klagholz's ("ITS Defendants") Motion to Dismiss Alleged Lanham Act Violations (Count VI of the Complaint), and Plaintiff Pitney Bowes, Inc.'s ("Pitney Bowes") Response in Opposition. For the reasons discussed herein, the Court grants ITS Defendants' Motion to Dismiss.

## I. FACTUAL BACKGROUND

Plaintiff and ITS Defendants are industry competitors. (Compl. ¶ 1.) Both are engaged in the business of selling, leasing, and servicing postal technologies and offering related mailing solutions. Plaintiff alleges that ITS Defendants engaged in a scheme where they called Plaintiff's customer service centers numerous times and, in each instance, posed as various clients of Plaintiff in order to procure confidential information regarding Plaintiff's clients' accounts. (Id.) ITS Defendants then used the confidential information it obtained from these phone calls to

solicit Plaintiff's clients' business and to undercut Plaintiff's prices in these bids. This information gave ITS Defendants a distinct advantage, because "ITS knew exactly when and at what prices to solicit [Plaintiff's] clients and disrupt [Plaintiff's] client relationships." (Id. ¶ 2.)

Plaintiff alleges that ITS Defendants were calling Plaintiff's customer service call centers in Wisconsin and Washington to obtain confidential information by pretending to be existing clients of Plaintiff. (Id. ¶ 23.) In conducting this scheme, ITS employees would call a customer service center purporting to be an agent of an existing client of Plaintiff. (Id. ¶ 24.) The ITS employee would claim to have been newly hired by the client and unable to find the client's documents relating to the products and services Plaintiff was providing for the client. (Id.) ITS employees performing these calls would also purport to possess certain identifying information for the client, for instance, "the client's telephone number, address, equipment type and/or serial numbers." (Id.)

The information ITS employee-callers requested ran from "when the lease of [their] Pitney Bowes postage meter was due to expire, the amount of [their] lease payments on the postage meter, whether any late payments had occurred on the account, [to] what the settlement quote would be or how much money it would cost to prematurely terminate an existing lease." (Id. ¶ 25.) Assuming these callers were who they represented themselves to be, Plaintiff revealed the requested confidential information to them. (Id. ¶ 26.)

Plaintiff eventually discovered the scheme when calls from supposedly different clients were made using the same telephone number and by someone with the same voice. (Id.) Additionally, when Plaintiff's account executives would call its clients to follow-up on these purported phone calls, the account executives would learn that no one by the name the caller had

2

provided worked for the respective clients. (Id.) While investigating this scheme, Plaintiff learned that the phone numbers used to contact its customer service center on behalf of these clients belonged to ITS Defendants. (Id. ¶ 28.) Plaintiff alleges that these calls were made by ITS employees, who acted with the consent and direction of ITS Defendants. (Id. ¶ 31.) As the result of this scheme, Plaintiff lost clients to ITS Defendants in a manner that evinces ITS Defendants' use of Plaintiff's confidential information "to underbid" and "'unhook'" Plaintiff's clients. (Id. ¶ 30.)

On August 11, 2009, Plaintiff sent a "cease and desist letter" to ITS that identified the allegedly unlawful conducting and demanded its cessation. (Id. ¶¶ 32-33.) At the time that Plaintiff filed the Complaint, however, ITS Defendants continued this alleged scheme to obtain Plaintiff's confidential information and use this information to bring Plaintiff's clients over to ITS. (Id. ¶ 34.)

## II. PROCEDURAL BACKGROUND

On November 2, 2009, Plaintiff filed the Complaint in the instant action against ITS Defendants as well as Ryan Himmelreich and Mark Gaston. Invoking diversity and federal question jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1331, respectively,[1] the Complaint asserts six claims premised on either federal or state law: (1) common law fraud; (2) unfair competition; (3) tortious interference with existing contractual relations; (4) conspiracy; (5) violation of Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.; and (6), violation of Lanham Act, 15 U.S.C. § 1125. (Id. ¶¶ 12, 36-83.)

---

[1] The Complaint also asserts that, pursuant to 28 U.S.C. § 1367, supplemental jurisdiction exists over the related state law claims. (Id. ¶ 12.)

ITS Defendants responded to the Complaint in the form of a pre-answer Motion to Dismiss Count VI (Lanham Act Violations) of the Complaint for Failure to State a Claim, filed on November 25, 2009. Subsequently, on December 11, 2009, Plaintiff filed an Amended Response to ITS Defendants' Partial Motion to Dismiss.

### III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. FED. R. CIV. P. 12(b)(6). Pursuant to Rule 8(a), the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). To withstand a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint that provides sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" meets the required level of "facial plausibility." Iqbal, 129 S. Ct. at 1949 (concluding that "respondent's complaint has not 'nudged [his] claims' . . . 'across the line from conceivable to plausible'" (quoting Twombly, 550 U.S. at 570.)) On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

This analysis is derived from two guiding principles recognized by the Court in Twombly, reaffirmed in Iqbal, and echoed by the Third Circuit in Fowler v. UPMC Shadyside. See Iqbal, 129 S. Ct. at 1949-50 (quoting Twombly, 550 U.S. at 555-56.); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). "First, the tenet that a court must accept as true

4

all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949-50. In other words, a "District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-211; see also Iqbal, 129 S. Ct. at 1949. (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d 211. Evaluating whether a complaint demonstrates "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. In sum, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

**IV. DISCUSSION**

Plaintiff asserts that ITS Defendants violated the Lanham Act by: (1) falsely representing to Plaintiff that they were Plaintiff's clients receiving Plaintiff's goods and services in order to obtain confidential information; (2) causing "confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with [Plaintiff's] clients"; and (3), in sum, inducing Plaintiff's clients to terminate service with Plaintiff, and in place, retain Defendants for their postal solutions. (Compl. ¶¶ 77-83.) In its Complaint, Plaintiff broadly cites 15 U.S.C. § 1125 as the source of these alleged Lanham Act violations without specifically indicating the section of the statute under which it asserts its claims. Plaintiff's Response to ITS Defendants'

Motion to Dismiss adds little clarity as to the exact nature of its Lanham Act claims. The Response cites to only 15 U.S.C. § 1125(a)(1)(A), but again broadly incorporates the statute's language into its argument. At the risk of being over-inclusive, the Court reads Plaintiff's Complaint as asserting claims under 15 U.S.C. § 1125(a)(1)(A) and (B). Yet, even with this generous reading of Plaintiff's claims, the Court finds that Plaintiff has failed to state a cognizable violation of the Lanham Act as a matter of law.

Section 43(a) of the Lanham Act, as amended in 1988 as well as 1992, and codified in 15 U.S.C. § 1125(a), embodies the two overarching principles of the Act: "to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" Datastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003) (quoting 15 U.S.C. § 1127). To that end, Section 43(a) provides "two bases of liability: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ('false association'), and (2) false representations in advertising concerning the qualities of goods or services ('false advertising')." Serbin v. Ziebart Int'l Corp., Inc., 11 F.3d 1163, 1173 (3d Cir. 1993) (footnote omitted); see also 5 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION, § 27:9 (4th ed. 2009) [hereinafter "MCCARTHY ON TRADEMARKS"] ("§ 43(a) gradually developed through judicial construction into the foremost federal vehicle for the assertion of two major and distinct types of 'unfair competition': (1) infringement of even unregistered marks, names and trade dress, and (2) 'false advertising.'"). These two "prongs," — infringement and false advertising — correspond to sections 1125(a)(1)(A) and (B), respectively.

See 15 U.S.C. § 1125(a)(1)(A)-(B). The Court will address whether Plaintiff has stated a claim for both infringement and false advertising.

### A. Infringement Claim Under 15 U.S.C. § 1125(a)(1)(A

Courts measure "federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). To establish a violation of either Lanham Act section, "'a plaintiff must show that: (1) the mark is valid and legally protectable; (2) *the mark is owned by the plaintiff*; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services.'" Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 470 (3d Cir. 2005) (quoting A & H Sportswear, Inc., 237 F.3d at 210) (emphasis added).

Here, Plaintiff failed to allege sufficient ownership interest in any of the relevant marks or names to state a cognizable claim under section 1125(a)(1)(A). This omission of a prima facie element of an infringement claim under 15 U.S.C. § 1125(a)(1)(A) renders Plaintiff's Complaint defective and requires dismissal of this claim. The factual scheme Plaintiff alleges involves ITS Defendants impersonating or representing themselves as Plaintiff's clients. These allegations cannot support Plaintiff's infringement claim, since the "misdeeds" are unrelated to any mark in which Plaintiff claims ownership interest. Plaintiff, moreover, has failed to specify any particular third-party marks allegedly infringed, or to assert sufficient ownership interest in such marks to state a claim under 15 U.S.C. § 1125(a)(1)(A). See MCCARTHY ON TRADEMARKS § 27:13 ("While Lanham Act § 43(a)(1)(A) does not explicitly require that the plaintiff be the owner of a

protectable mark, there is no other way that the requisite likelihood of confusion, deception or mistake can occur.").

While Plaintiff, in its Response, accurately states that "the Lanham Act provides it is unlawful for a person to falsely represent their association with another in connection with goods or services," more is required to set forth a claim under the Act, as discussed above. Additionally, the cases that Plaintiff cites to support this proposition are all inapposite to the case at hand. In each <u>Island Insteel Sys., Inc. v. Waters</u>, 296 F.3d 200 (3d Cir. 2002), <u>SMC Promotions, Inc. v. SMC Promotions</u>, 355 F. Supp. 2d 1127 (C.D. Cal 2005), and <u>Mortgage Elec. Registration Sys., Inc. v. Brosnan</u>, No. CIV.A.09-3600, 2009 WL 3647125 (N.D. Cal. 2009, Sept. 4, 2009), the plaintiff used or otherwise held a sufficient ownership interest in each of the names or marks at issue. Thus, the circumstances of these cases stands in stark contrast to those of the present case, in which Plaintiff seeks to assert 1125(a)(1)(A) violations on the basis of marks that it neither uses nor owns. In short, absent a claimed ownership interest in an allegedly infringed mark, Plaintiff failed to plead any violation of section 1125(a)(1)(A), let alone a "plausible claim for relief."

**B. False Advertising Claim Under 15 U.S.C. § 1125(a)(1)(B)**

Section 1125(a)(1)(B) prohibits "use of another person's mark that, 'in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.'" <u>Facenda v. NFL Films, Inc.</u>, 542 F.3d 1007, 1015 n.4 (3d Cir. 2008) (quoting 15 U.S.C. § 1125(a)(1)(B)). The threshold matter in addressing an alleged false statement actionable under 15 U.S.C. § 1125(a)(1)(B) is whether the statement constitutes "commercial advertising or promotion."

Synygy, Inc. v. Scott-Levin, 51 F. Supp. 2d 570, 576 (E.D. Pa. 1999) (quoting 15 U.S.C. § 1125(a)(1)(B)). In the absence of an express definition of "commercial advertising or promotion" in the Lanham Act, courts have developed a four element test to define these terms in accordance with the Act's language and congressional intent. Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 455-56 (D.N.J. 2009) (discussing the development of this definition first in Gordon & Breach Sci. Publishers v. Am. Inst. of Physics, 859 F. Supp. 1521, 1537 (S.D.N.Y.1994) and subsequently in Seven-Up v. Coca-Cola, 86 F.3d 1379, 1383 n.6, 1384 (5th Cir.1996)); Synygy, Inc., 51 F. Supp. 2d at 576; Caldon, Inc. v. Advanced Measurement & Analysis Group, Inc., 515 F. Supp. 2d 565, 578 (W.D. Pa. 2007) ("In deciding whether representations were commercial advertising or promotion within the Lanham Act, courts in this jurisdiction apply the test from Seven-Up v. Coca-Cola Co. . . . ."). "Commercial advertising or promotion for purposes of the Lanham Act consists of (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) designed to influence customers to buy the defendant's products; (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry." Synygy, Inc., 51 F. Supp. 2d at 576; see also MCCARTHY ON TRADEMARKS § 27:71. Only after determining that the relevant statement constitutes commercial advertising or promotion would a court consider the remaining elements of a Lanham Act claim based on a false or misleading representation of a product under 15 U.S.C. § 1125(a)(1)(B).[2]

---

[2] As the Third Circuit provided in Warner-Lambert Co. v. Breathasure, Inc., the remaining elements that a plaintiff must demonstrate to establish a Lanham Act claim based on a false or misleading representation of a product are:

1) that the defendant has made false or misleading statements as to his own

9

In the case at hand, Plaintiff's allegations do not give rise to an inference that ITS Defendants' misstatements are "commercial advertising or promotion" within the meaning of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). ITS Defendants communicated the statements at issue – those made during phone calls to Plaintiff's call centers intended to obtain information regarding Plaintiff's clients – directly to their competitor, Plaintiff. These communications are a far cry from communication "designed to influence customers to buy defendant's products" and "sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry." Noting that isolated statements to potential customers generally do not constitute sufficient dissemination to be defined as advertising within the meaning of the Lanham Act, the Court finds that private statements *to competitors* – without more – falls short of commercial advertising as defined in the Act. See Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., No. CIV.A.00-3683, 2001 WL 856946, at *11 (E.D. Pa. July 26, 2001) ("Generally, isolated private statements are not sufficiently disseminated to constitute advertising.") (citing Synygy, 51 F. Supp. 2d at 577)). In sum, the statements alleged are not false representations about ITS Defendants' or Plaintiff's products made for public dissemination; they are simply misrepresentations of ITS Defendants' true identity used to obtain confidential information from Plaintiff. While these alleged statements may be actionable in certain contexts, they fail to constitute a claim for false advertising under the Lanham Act as a

---

      product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

204 F.3d 87, 91-92 (3d Cir. 2000).

matter of law. See Synthes (U.S.A.) v. Globus Med., Inc., No. CIV.A.04-1235, 2005 WL 2233441, at *10 (E.D. Pa. Sept. 14, 2005) ("An action under the Lanham Act . . . 'is not a cause of action for maligning the company itself, but rather a remedy for misrepresentation in advertising about a particular product or commercial service.'" (quoting Synygy, 51 F. Supp. 2d at 578)).

V.	CONCLUSION

According to the rationale set forth above, the Court grants ITS Defendants' Motion to Dismiss the Lanham Act Claims.

An appropriate order follows.